# EXHIBIT A

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| IN RE: BAIR HUGGER FORCED AIR WARMING DEVICES PRODUCTS LIABILITY LITIGATION | File No. 15-MD-2666 (JNE/DTS) |
| | December 2, 2025<br>Minneapolis, Minnesota<br>Courtroom 9W<br>11:03 a.m. |

---

**THE HONORABLE DAVID T. SCHULTZ**
**UNITED STATES MAGISTRATE JUDGE**

**(ORAL ARGUMENTS MOTION HEARING)**

APPEARANCES:

| | |
|---|---|
| FOR THE PLAINTIFFS: | WALSTON, PC<br>Cliff Walston, Esq.<br>4411 San Felipe Street<br>Suite 600<br>Houston, TX 77027 |
| (Appearing by phone:) | COFFIN LAW, LLC<br>Christopher L. Coffin, Esq.<br>1311 Ave. Ponce de Leon<br>Suite 504<br>San Juan, Puerto Rico 00907 |
| | DAVIS & CRUMP<br>Robert Cain, Esq.<br>2601 14th St.<br>Gulfport, MS 39501 |

Appearances continued next page:

FOR PLAINTIFFS:
(Appearing by Phone):

PENDLEY BAUDIN & COFFIN
Palmer Lambert, Esq.
Remy Higgins, Esq.
24110 Eden Street
PO Drawer 71
Plaquemine, LA 70764-3713

FOR THE DEFENDANTS:

NORTON ROSE FULBRIGHT US LLP
Benjamin W. Hulse, Esq.
60 South Sixth Street
Suite 3100
Minneapolis, MN 55402

FAEGRE DRINKER BIDDLE & REATH
John Mandler, Esq.
90 South Seventh Street
Suite 2200
Minneapolis, MN 55402

COURT REPORTER:

MARIA V. WEINBECK, RMR-FCRR
Official Court Reporter
1005 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415

Proceedings reported by certified stenographer; transcript produced with computer.

* * * * *

P R O C E E D I N G S

(11:03 a.m.)

THE COURT: Good morning, everyone, be seated.

All right, good morning to those of you on the phone. Don't say anything at this moment. I will call your appearance in a minute, please.

All right. We are on the record in the matter of Cook versus 3M, et al., Case No. 17-1115. Counsel for plaintiffs, beginning with the gentleman in the courtroom, note your appearance please, and state which matter you're appearing in.

MR. WALSTON: Cliff Walston, Your Honor. Thank you for having me. This is my first time up here. I'm appearing on behalf of arguing on behalf of all of the plaintiffs in relation to these motions today. I personally represent plaintiffs' Cook and Ziretta.

THE COURT: All right, very well. Thank you, Mr. Walston.

Counsel on the phone who may or may not be appearing, if you will identify yourselves please and state which matter you are appearing in.

MR. LAMBERT: Good morning, Your Honor. Palmer Lambert of Pendley Baudin & Coffin on the Cook matter.

THE COURT: All right. Good morning.

MR. COFFIN: Good morning, Your Honor. Chris

Coffin with Coffin Law, on the Cook matter as well.

THE COURT: Good morning, Mr. Coffin.

MR. HIGGINS: Good morning, Your Honor. Remi Higgins, Pendley Baudin & Coffin, on behalf of the Cook matter as well.

THE COURT: All right. Good morning, Mr. Higgins.

Anyone else on the telephone?

MR. CAIN: Good morning, Your Honor. Robert Cain with Davis & Crump on behalf of plaintiff Ramirez.

THE COURT: Good morning, Mr. Cain. Anyone else?

All right. Hearing nothing, I'm going to ask the four of you to mute the line. You can certainly listen in, but I believe Mr. Walston will be presenting the argument today.

Counsel for 3M, if you'll note your appearances, please.

MR. MANDLER: Good morning, Your Honor. John Mandler representing the defendant.

THE COURT: Good morning, Mr. Mandler.

MR. HULSE: Good morning, Your Honor. Ben Hulse representing the defendants.

THE COURT: Good morning, Mr. Hulse.

So, essentially, we have the same issue, I think, or set of issues with respect to all four of these matters. I will tell you that the Court has been taking these issues,

both the motions to dismiss that have been referred by Judge Ericksen and the motions to amend, which automatically come to me, I've been taking those under advisement without the necessity of an oral argument. Somehow, these four cases were scheduled for oral argument and there they sat, and it was not until very recently that we realized they were still on the docket for oral argument and rather than cancel that at the last minute and inconvenience parties who had already traveled, I certainly didn't want to do that, and I'm more than happy to hear argument. I'm sure that I will find it useful and enlightening.

So with that, Mr. Mandler, Mr. Hulse, whoever is arguing, why don't you come on up for 3M. I'm going to ask you a few questions and then take whatever comments you have. These four matters, and just for the record I should identify them:

Cook, 17-cv-1115; Ziretta, 25-cv-1681; Ramirez, 17-cv-4976; and Patton, 25-cv-1520. Am I omitting any to your knowledge, Mr. Mandler?

MR. MANDLER: No, I think that's correct, Your Honor.

THE COURT: So as I understand it, 3M's position is several fold. Number one, that these cases are all subject to judgment on the pleadings because they were filed beyond the statute of limitations that there are two

statutes of potential limitations that apply here, the longest of which is four years, and, therefore, all of the cases, regardless of the legal claims raised are all barred in their entirety because they were all filed more than four years beyond at least how 3M calculates the statute of limitations; is that correct?

MR. MANDLER: That's correct. You accurately summarized what I have 23 pages of an outline.

THE COURT: And as I understand it further, there is in Texas, assuming we're applying Texas law, there is a discovery rule but that 3M's position on that is that it does not apply in a case of this type or of these types; is that correct?

MR. MANDLER: That is correct.

THE COURT: Say a little more about that, if you would.

MR. MANDLER: I will. The rule, and let me just advance to get there. First of all, on the choice of law issue, there is not a dispute. Both sides agree that Texas law applies. Both sides agree that if the discovery rule does not apply, then the cases are barred by the two-year statute of limitations for product liability and the four year that you mentioned.

The standard under Texas law for whether the discovery rule applies, first of all, the Texas Supreme

Court has said that it's a very limited exception to the statute of limitations, and it only applies where two things occur, and they both have to occur.

The first is whether the injury is inherently discoverable and objectively verifiable, and that is where --

THE COURT: Inherently undiscoverable. I think you said "discoverable".

MR. MANDLER: Undiscoverable. Inherently undiscoverable and objectively verifiable. And in looking at the briefing, this seems to be where the parties were talking past each other a little bit, so I put together this chart to help me think about it in each of these two different elements that both have to occur. 3M is arguing that it's the fact of injury that has to be inherently undiscoverable for it to apply and that it's the cause of injury that has to be objectively verifiable. Plaintiffs take the opposite position. They say that the standard for inherently undiscoverable applies to the cause of the injury, and the objectively verifiable applies to the fact of the injury. And so we're on either side of those, and it's up for Your Honor to look at the case law and figure out which one makes the most sense.

I will say that I think if plaintiffs have to say that because if they say otherwise, if it is the fact of the

injury that's inherently undiscoverable, plaintiffs aren't disputing the fact that the plaintiffs have a PJI is discoverable. So if it turns out that the case law says inherently discoverable applies to the fact of the injury, then plaintiffs agree they don't meet that element.

And, likewise, if objectively verifiable applies to the cause of the injury, plaintiffs are not claiming the cause of plaintiffs's PJI is objectively verifiable. For example, under that standard, if it was mesothelioma, if they had that, it objectively verified that it came from asbestos. That's not the case here. Many, many things cause infection, and Your Honor has heard enough of the science on this, and I'm not going to dwell on it.

THE COURT: Let me ask you this, given the debate between the two parties, where do you believe -- I mean how clear would you say the case law is on these two elements? Which applies to which? The fact of the injury and the cause of the injury?

MR. MANDLER: I think the case law is very clear on it, and, obviously, the plaintiffs have a good argument, and they've looked at two particular cases that I'll address and why I don't think they apply. But I think in the examples that come up through the Texas courts in the way that they frame it, I think that it's fairly clear that it's the fact of the injury that is related to the inherently

undiscoverable and the cause of injury that's related to the objectively verifiable.

And let me just go back to the plaintiffs' position. The problem with the plaintiffs' position is it puts them on two extremes. If the cause of the injury is inherently undiscoverable, in any case, how are they ever going to establish liability? How are they ever going to establish causation? If it has to be causation that's inherently undiscoverable, how do they prevail? So that's one of the end of the extreme.

The other end of the extreme, if it's the fact of the injury that's objectively verifiable, every injury eventually is objectively verifiable. You get diagnosed, you know, you break your leg, part of a fire or something, I mean the fact of the injury rather than the cause is easily verifiable. So their position on two ends of the extreme where if you apply them in the real world, it doesn't make any sense.

THE COURT: Does -- okay, keep going.

MR. MANDLER: Okay. You asked about the case law and what supports it. I'll go through that in a little bit here. For the fact that inherently undiscoverable applies to the fact of the injury, the Texas Supreme Court has said that injury is inherently undiscoverable if it is by nature unlikely to be discovered within the provided limitations

period despite due diligence.

And the primary example is of a inherently undiscoverable injury is a latent occupational disease that may not manifest itself for two to three decades after the exposure, asbestos, obviously, And that's the *Childs v. Haussecker* case, 974 S.W.2d 31. I should say everything in my presentation this morning is direct from their briefs. I'm not that original, so at any point you want me to move on, just tell me so.

And then the cause of the injury, whether it's objectively verifiable, the Texas Court of Appeals in the *Howard v. Fiesta* case says, "An injury is objectively verifiable if the presence of the injury and the wrongful act causing the injury cannot be disputed." So it's the cause that has to be objectively verifiable.

"This requires physical evidence which in and of itself establishes the negligence." That's from the *Robinson v. Weaver* case, the Texas Supreme Court case, that is sort of the key case, and the one reason I think on the second element that we say that the case law is very clear.

The classic example of an objectively verifiable cause of injury is if there's a foreign object left in the body during surgery. The presence of the object, the injury, is verifiable, but also how it got there. The cause that a surgeon accidently left it behind. Otherwise, it

wouldn't be there.

THE COURT: I'm not sure I can articulate this, but it strikes me that this second prong, that it would make sense to operate in this fashion: One, that the statute of limitations is tolled until the inherently undiscoverable injury is discovered, point 1, meaning the idea is that plaintiff shouldn't be barred if they don't even know they have an injury, but once the injury occurs, then it would seem the way these cases say it that the statute of limitations begins to run, and the cause of injury being objectively verifiable is less a timing issue than it is a merits issue. Do you understand what I'm saying?

So it's almost as if you get over the timing hurdle, now you're within the statute of limitations, but the timing delay is going to be taken away if you can't objectively verify the cause.

MR. MANDLER: I think that's right if I'm following, Your Honor.

I mean let's say, for example, that you understood that there in its case, that you had an infection, but let's say there was a magical, you could draw blood and you could immediately know that it came from a source, and it's not that farfetched.

Plaintiffs like to talk about the LivaNova litigation where it was a different type of warmer. In that

case, they had the CSI evidence of the bacteria, actually they had the genetic sequence where you could test the bacteria in the patient. You could compare it to the genetic sequence and say that same bacteria was present in the factory where the machine was made, and they matched. Obviously, if you could do that, then that would be pretty close to objectively verifiable.

We clearly do not have that in these cases because we have types of bacteria that are ubiquitous and, again, you've heard all the science on that. That can come from many, many, different causes, so you're never going to get to that level of objectively verifiable, which I agree ties into the merits.

THE COURT: Okay. Keep going.

MR. MANDLER: Okay. Let me go to the flip side of what I think the plaintiffs are relying on and why I don't think it says what they think it says. Primarily, they look at the *Schlumberger Tech Corp. v. Pasko*. It's also out of the Texas Supreme Court, a 2018 case, and I think that fits, Your Honor, with what you were just describing. Once the injury itself is discoverable, in other words, it's not inherently discoverable, that kind of stops the discussion, and that's what happened in the *Schlumberger* case.

In that case, it's really not even relevant as to the inquiry of inherently undiscoverable and objectively

verifiable because those questions weren't even analyzed by the court because it didn't get there because the injury was immediately known.

In that case, there was a plaintiff that was burned by a caustic chemical while working on an oil well, so that injury was immediate, it was acute, it was well-known. So it wasn't -- we never got to the inherently undiscoverable because it was discoverable and known right away.

The Texas Supreme Court found that the discovery rule did not apply basically because of that and the claims were untimely. The Court explained the discovery rule delays accrual if the plaintiff knew or in the exercise of reasonable diligence should have known of the wrongful act and the resulting injury, and the Court held that happened at exactly at the time of the injury.

And, significantly, the Court even did not get to the issue of inherently undiscoverable or objectively verifiable requirements. They just weren't at issue but instead stated whether the discovery rule applies turns on whether the injured person is aware that she has an injury and that it was likely caused by the wrongful act, and the Court said because they had this acute injury, and it was caused at work. It was caused due to exposure to chemicals, they knew they had an injury, and it was caused by wrongful

acts and that started the running of the statute of limitations.

THE COURT: The Court, it strikes me, didn't -- well, I mean they just never really reached it because of the two facts that you're saying. One, the injury was immediately known, and the cause was obvious, and no matter even if you flipped it, the two factors would apply equally even if you flipped which way they apply, so it just wasn't even a discovery rule issue.

MR. MANDLER: I think that's correct. That's our reading of it, Your Honor.

So given 3M's belief that its position on inherently discoverable and objectively verifiable are satisfied and supported by the Texas case law that takes us to the fact that the discovery rule in fact in this case is not going to apply, which means the two years and the four year statute of limitations will apply, and the statute of limitations will start running at the time of the discovery of the injury at the latest and that's the diagnosis in these cases of the fact of the PJI.

We do have a secondary argument, I don't think we need to get there, but I'll mention it for completeness. Even if the discovery rule were to apply, and we don't think it does, we think under Texas law the diagnosis of the PJI would caught off the discovery rule, that it would be

discovered at that point and the statute of limitations would start to run. And, basically, under the same reasoning that the Court adopted, that Judge Ericksen adopted in *Pelican, Jones*, and *Skinner* because under Texas law when the discovery rule does apply, accrual is tolled until a claimant discovers or in the exercise of reasonable diligence should have discovered the injury and that it was likely caused by the wrongful acts of another. But once these requirements are satisfied, limitations commenced even if the plaintiff does not know the exact identity of the wrongdoer. That's from *Childs v. Haussecker*, 974 S.W.2d 31 at 40, Texas 1998.

So don't think we need to get there because we don't think they can meet the elements of the Texas discovery rule, but if we do, under Texas law, we believe that under the Court's reasoning in the Louisiana and the Iowa cases, that the discovery rule would cease at the time of knowledge of the infection.

And, finally, let me talk about one other thing that the plaintiffs rely on and that's *In Re 3M Combat Arms Earplug Litigation*, and the decision as to that court's interpretation of the Texas law in that case.

First, obvious point, it's non-binding. It's a Florida federal court interpreting Texas law as opposed to Texas court that this court needs to follow.

Second, the case is distinguishable on the facts. The injury in that case in *Combat Arms* were fundamentally different than the injuries we're talking about here. In *Combat Arms* in the earplug litigation, the allegation was the earplugs loosened imperceptibly over time while in use, which reduced their effectiveness and over time resulted in hearing damage, so the injuries occurred over time with the repeated use of the ear plugs. Closer to the latent industrial kind of injuries that I was talking about earlier, not an acute injury like the development of an infection that we have in this case.

Given these differences, this Court doesn't need to look to a federal court in Florida for guidance but instead should follow the Texas law and the Texas cases that we cited.

I'm going to spend a few minutes, unless Your Honor has questions on some of the other causes of action and make sure we're clear on those and then I'll finish up with the motion to amend, for leave to amend to plead fraudulent concealment.

The fraud in the contract base claims are covered by four years for fraud and two years for negligent misrepresentation and unjust enrichment. The same analysis applies as we talked about earlier as Your Honor noted at the beginning and so we ended up with the same place in each

of those causes of action.

The warranty claims themselves, their independent claims are time barred, but the plaintiffs argue they're not independent, but they're brought under the Texas Deceptive Trade Practices Act, the DTPA, which also has a statutory discovery rule that more or less follows the other discovery rule, and so I'll address those as part of the DTPA claims.

The DTPA claims are subject to a two-year statute of limitation with a statutory discovery rule, which is all actions brought under the subchapter must be commenced within two years of the date on which the false, misleading and deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, deceptive act or practice.

And for the same reasons I talked about as relating to Pelican, Jones, and Skinner, we think Judge Ericksen has said that that happens at the time of the diagnosis of the PJI. And so as such, the DTPA claims are likewise barred for the reasons I've discussed.

In addition, we don't think the plaintiffs failed -- pled detrimental reliance with particularity as it relates to their DTPA claim. Reliance is a necessary element of the DTPA claim based on false and misleading or deceptive acts, and those claims have to be fled with

particularity under 9(b).

Here, the plaintiffs don't so much dispute that they failed to plead detrimental reliance, instead they're seeking to amend their Complaint, so I'll turn to the Motion to Amend to Plead Fraudulent Concealment. Let me first note the Minnesota Consumer Protection Act here fails as a matter of law as plaintiffs weren't injured here in Minnesota. The Court has already ruled on that issue in the *Partlow v. 3M Co.* case. That's at Docket 29. It was decided in 2019 agreeing with 3M that and dismissing the Minnesota Consumer Protection Act claims where the injury didn't occur here.

So the Motion to Amend to Plead Fraudulent Concealment we believe is futile for a number of reasons. First, the plaintiffs have to plead with particularly the who, what, when, where and why, and they have to plead the facts that would show evidence of an underlying tort committed by defendants, knowingly committed by defendants with the intent to conceal facts necessary for the plaintiffs to know that a cause of action has occurred.

Plaintiffs have not pled and cannot show the defendants used deception to conceal the facts necessary for plaintiffs to know that a cause of action has occurred. In this we get back to the same analysis that Judge Ericksen did in Pelican, Jones, and Skinner, and the same facts I argued earlier that once the plaintiff has been diagnosed

with a PJI, the plaintiffs has the facts necessary to discover and to do the inquiry that Judge Ericksen described to discover whether or not a Bair Hugger was used. Once they know that, there's enough facts in particular after the formation of the MDL for the plaintiff to know that they have a cause of action.

THE COURT: Yeah, I was going to ask you about that, but remind me, I should have looked at the precise date, but what is the exact date on which the MDL was formed? Was it in 2015?

MR. MANDLER: December of 2015. I don't know the date within December.

MS. ZIMMERMAN: December 11.

MR. MANDLER: I knew you would know. December 11, 2015.

THE COURT: And so as to Ziretta and Patton, it seems to me that fraudulent -- at a minimum as to those two cases, they were filed 10 years after the initiation of the MDL, so it's hard to understand what fact or set of facts could have been fraudulently concealed once the MDL has been established, but, you know, obviously that's playing to you, but you want to comment further on that? It's certainly a question I'm going to ask Mr. Walston.

MR. MANDLER: Obviously, I agree, Your Honor. The other point I would point out is some of the facts that

the plaintiffs are pointing to that are evidence of 3M's supposed concealment of facts are statements in evidence that arose after that date, after December 11th of 2015. And our position would be anything that we did after that is irrelevant because the MDL is formed and anybody using due diligence can figure out they have a cause of action.

THE COURT: Well, the point of the fraudulent concealment tort is by the defendant's affirmative conduct to fraudulently conceal certain facts, it prevents somebody from knowing they have a potential cause of action and clearly a number of people knew enough facts as of December of 2015 to know there was a potential cause of action.

MR. MANDLER: Correct, Your Honor. I agree. And I guess the last point we made on the amendment is that these complaints have to be pled with particularity. It can't be enough that plaintiffs say that 3M announced to the world X, Y or Z. It has to be that 3M somehow deceived that these particular plaintiffs, and we have to know who said it, when they said, it, where they said it, to whom they said it, and what exactly was said, and we don't think even the proposed Amended Complaint meets that standard.

The only other thing that I had on my list to address is whether or not procedurally the motions are proper. I think that ship has sailed with Judge Ericksen's ruling and with the cases being sent to Your Honor for

resolution, but I'm happy to address it if you have a need for that.

THE COURT: I don't think so. Thank you.

MR. MANDLER: Okay. I'll just reserve then to respond to what Mr. Walston has to say.

THE COURT: All right. Thank you, Mr. Mandler. Before you begin, be sure to restate your name for the record.

MR. WALSTON: Your Honor, Cliff Walston on behalf of all the plaintiffs arguing today.

Thank you for the opportunity to speak to the Court. The reason we're having an oral argument was because it was at my request, and so I appreciate the Court indulging us today in hearing from me. Excuse me, I'm a little bit under the weather so apologies for that.

THE COURT: I'm familiar with that.

MR. WALSTON: Do you want me to just address what I would like, walk through my presentation? Or do you have specific questions for me in the same vein that you would like to start?

THE COURT: Well, by all means, go ahead and address what you think I should know. You know, obviously, this question of which test applies to which element is the focus at least of 3M's argument, and you appear to be acknowledging that if their interpretation of the discovery

rule is correct, then the cases would be barred or at least wouldn't be saved by the discovery rule, but tell me if that's --

MR. WALSTON: I don't know that I agree with that standpoint, Your Honor. I think what makes Texas -- I'm not going to say "unique" but maybe different than some of the other state's laws that this Court has heard about is because the Texas discovery rule has both an objective and a subjective element, Your Honor. And it's this subjective element that is a factual-based inquiry in which the court must conduct such an inquiry based on the specific facts of these cases. And it's that objective element that goes to the heart of the dispute of this, which is --

THE COURT: But your view is the subjective element applies to the cause of the injury not the fact of the injury.

MR. WALSTON: In this case, on these facts, yes, Your Honor, because it's not enough for the plaintiff to just know that they were injured, that they had an infection, that there was something wrong with their body post-surgery. They have to be put on notice of facts, specific facts relating to them. Their injury was likely caused by the wrongful act of someone else, and that is what goes to the heart of the Texas discovery rule.

There are certainly common applications of the

discovery rule in the latent occupational disease-type category and that has its set of analysis, but that's not the only scenario in which Texas applies to the discovery rule. In fact, what I read in the first line of their brief that Texas doesn't recognize the discovery rule, I was in these contexts personal injury cases such as these I was taken aback because to a Texas practitioner that's just patently not the law, rather the court has to conduct an analysis, a factual-based analysis of the plaintiffs' knowledge at the time and apply that to their knowledge not just of their injury, which is what the defendants would like, but that their injury was caused by the wrongful act of another.

That is why I have been unable to locate, Your Honor, a single case anywhere in the country in which the court ruled on a discovery rule issue at the motion for judgment on the pleadings stage. It may exist. I can't represent to the court that it doesn't exist, but I endeavored to search for a single instance in which the Texas discovery rule issue was adjudicated in a motion for judgment on the pleading stage, and it's simply not and that's because these are factual-based inquiries that can be addressed by the court at a motion for summary judgment stage once those factual-based inquiries have occurred, and that is what I think is missing from the defendant's

analysis. That is both in the *Schlumberger Tech* case, which is a Texas Supreme Court case, recognized by the Fifth Circuit applying Texas law.

THE COURT: You are positing a description of a discovery rule that is to my knowledge unlike anywhere else in the country in that this is very broad brush, and I'm not saying it is the law in all states that have the discovery rule, but as a general approximation, once a plaintiff is aware of the fact of an injury, they are put on inquiry notice. And, first of all, do you agree that that is, generally, how other states deal with the discovery rule?

MR. WALSTON: Perhaps, Your Honor, but it's not just an injury in Texas. It's an injury and that that injury was caused by the wrongful act of someone else, and we can discuss the specifics of some of these case, and I would like to.

THE COURT: But, okay, so let me -- let's say -- let's take a different sort of fact scenario, okay.

MR. WALSTON: That's exactly what I would like to do.

THE COURT: Well, I'm going to give you one that you may not like. But let's assume that somebody is -- a woman is slipped a date rape drug and is in fact then sexually assaulted, and that unfortunate person knows immediately, again, my hypothesis, that she has been

sexually assaulted but has no idea who it is. At that point, your argument would be she has up to 40, 50 years to discover the identity of the person who did it.

MR. WALSTON: No, Your Honor. The identity of that person is not a part of the discovery rule. It is that someone --

THE COURT: That someone was wronged.

MR. WALSTON: -- did something wrong. So if we go to the Schlumberger case, the one that they discussed and pointed out. The facts of the case were a person was sent to go clean up a spill. The spill contained chemicals. Those chemicals made contact, physical contact with the skin, and they were burned immediately within hours, right. So into that scenario, the Court concluded that the plaintiff knew that someone had done wrong because he, in fact, had sued multiple people within the statute of limitations alleging their wrongful acts. He just didn't know the identity of Schlumberger during that process. Therefore, Schlumberger got out while the other defendants remained in the case because Schlumberger was brought in after the statute of limitations had run.

THE COURT: You know, let me interrupt you for a second. This ties into perhaps an issue that's not directly relevant here but that I often wondered about, which is in that circumstance, the prudent thing for the lawyer to do is

to name John Does, and if they do that, they don't have a statute of limitations problem, right?

MR. WALSTON: Presumably, yes.

THE COURT: Okay. All right. Anyway, keep on.

MR. WALSTON: So in your -- so I do want to draw the distinction for Your Honor. It's not the identity that must be known. It's the fact that a wrongful act occurred. So let's take the foreign object in the body scenario, right?

THE COURT: That one is easy.

MR. WALSTON: That one is easy. Obviously, a foreign object doesn't get in your body without someone making a mistake. So it's clear there's the wrongful act of another. The *Schlumberger* case, the chemical exposure case, cleared of the wrongful act of another, right?

So there are oftentimes when the existence of an injury itself makes clear that there was also the wrongful act of another, correct?

THE COURT: Right.

MR. WALSTON: And so this is a scenario with the Bair Hugger that may be somewhat unique in which these plaintiffs don't know most often than not that the Bair Hugger was even used during their surgery because as Your Honor is very much aware, right, it's put on after they've been administered general anesthesia.

In addition, you know, I've sat through multiple depositions of plaintiffs, Your Honor, in which the informed consent form gets put in front of them and that they had knowledge that an infection was a potential risk, in a situation through no wrong of anyone you could get an infection.

THE COURT: Right, and isn't that ultimately your point? Your point is all of these plaintiffs knew they had an injury, but what they didn't know is that the injury was caused by the wrongful act of another, could have been the surgeon, could have been the Bair Hugger, could have been who knows what, or it could have been just not a wrongful act by anyone.

MR. WALSTON: That's correct, Your Honor.

THE COURT: And, therefore, choosing between somebody's wrongful act and nobody's wrongful act, the plaintiff doesn't simply know.

MR. WALSTON: They don't know that there was a wrongful act that even occurred. In fact, the defendants agree with that proposition. On their brief in page 13, they state that the presence of an infection alone is not in and of itself evidence that a tort was committed. And that's my exact point is that in this scenario of the Bair Hugger's and the PJIs, when the start of the statute of limitations in the discovery rules applicability relates to

the wrongful conduct of another, that the plaintiff must have a factual basis to believe that that occurred, that wrongful act occurred. And what the plaintiff knew or didn't know and when they should have known it, a plaintiff that has medical training may be held to a different standard than, you know, a lay person without medical training. These are all factual inquiries that must be engaged on a case-by-case basis, which makes a judgment of the pleadings-type resolution on a master long form complaint in a short form complaint that doesn't provide for the ability to type out discovery rules specific point of facts completely inappropriate.

That's why these cases, to my knowledge, are exclusively resolved at the motion for summary judgment stage after that discovery has occurred and these factual undisputed facts are presented to the Court for analysis of the discovery rules applicability.

And it's not I don't like the phrase, I get trapped into using it sometimes too because that's how they characterized it, it's not whether the discovery rule applies, it's whether the plaintiff gets the benefit of the discovery rule under its analysis. The discovery rule is there. You know, plaintiff files a Complaint, defendant files a Motion for Summary Judgment on statute of limitations, plaintiffs response is discovery rule, and

there's a question of fact that needs to be resolved.

THE COURT: And your view of the question of fact that needs to be resolved is as to the fact of wrongful conduct, it comes down to what did the plaintiff know and when did he know it?

MR. WALSTON: Correct.

THE COURT: And until such time as the plaintiff has subjective awareness or subjective belief that this was caused by the wrongful act of someone, the statute is not running?

MR. WALSTON: That is correct, Your Honor.

THE COURT: So by that argument then, even after the MDL was formed in 2015, a plaintiff who sustained a PJI in 2010 could file it within the Texas statute of limitations 20 years from now.

MR. WALSTON: It depends on that particular plaintiff and what their actual knowledge was.

THE COURT: And there's no, in Texas law, there is no inquiry notice?

MR. WALSTON: There's a statute of repose that provides an end date of things such as this on products liability cases. There is an inquiry, a plaintiff must act diligently when they are specifically put on notice that they have a reasonable basis to believe that their injury was caused by the wrongful act of someone.

So a car wreck is obviously caused by someone, right? These situations don't occur very often, but they do occur, and that is why the existence of the discovery rule in Texas is what it is. It is a two-pronged analysis, one of which is objective and one of which is subjective, and the subjective component at play is when, what evidence, what background, what basis did that plaintiff have to believe that their injury was caused by the wrongful act of another? I mean that phrase is repeated case law after case law after case law, and it's clear, and it's clear that you don't have to know the identity for that to be triggered.

So it's not an infinite amount of time, but in this scenario with these types of injuries, with the fact that an infection can occur through situations in which there was no wrongful fact of anyone, on these facts, this is simply a plaintiff-by-plaintiff factual inquiry that cannot be adjudicated at a motion for judgment on the pleadings stage.

THE COURT: Well, two questions, one, what is the period of repose under Texas law, if you know?

MR. WALSTON: I believe it's 20 years. I could be wrong, Your Honor, but I'm not -- it's in the 20's, 20, 25, those two.

THE COURT: So by your argument then, I mean how would -- if it's the subjective knowledge or belief of the plaintiff, how would or how does a defendant ever prove that

the benefit of the discovery rule is not present?

MR. WALSTON: There could be medical records that discuss that this --

THE COURT: The plaintiffs said, Oh, I think it was caused by a wrongful act.

MR. WALSTON: Right. There's testimony. I mean in two remand cases that are mine in the District of Nevada, I have faced a summary judgment-based motion on the statute of limitations in which they have raised facts during my plaintiff's deposition that they believe establish that he was on or he had actual knowledge of the risk of that.

THE COURT: What about the date of consultation of the lawyer? Would that be evidence?

MR. WALSTON: I'm not sure. I haven't seen whether or not that would be evidence or not.

THE COURT: Okay. All right. Keep going.

MR. WALSTON: So if I return to the top here, it is really this component, the wrongful act of another, that I believe the defendants are skipping by and not fully analyzing. Again, I noted that earlier. I found no case in Texas or applying Texas law on the discovery rule that was resolved at an MJP status. I did find one that was raised, and the Court actually said I don't think this is appropriate. Let's do it on the summary judgment basis and kicked the can. And it is because of this factual based

nature of this inquiry under Texas law that makes that necessary.

I think that the *Robinson* case, that is one of the other things I wanted to address. That's what they rely heavily upon in their argument. And the *Robinson* case, so the *Robinson* case has been specifically limited to situations involving allegations of malpractice and what the Court has said is that judgment-based claims do not get the benefit of the discovery rule, and that has been extended to medical malpractice as well as legal malpractice and that really goes to the objective component. That's how that court ruled on that.

But I wanted to emphasize to the Court, and it's documented in briefing numerous times that this *Robinson* case, it is an exception to the exception of the discovery rule in which they specifically say that the discovery rule does not apply to professional malpractice actions involving where the allegation is an error in judgment and so that's not the scenario here.

You know, if we were sitting here with doctors as defendants and arguing professional malpractice claims against them, then they could raise this *Robinson* case back at me in response, but a manufacturer of a product in a products liability claim in Texas does not get the benefit of Robinson's analysis. It doesn't apply.

THE COURT: All right. Tell you what.

MR. WALSTON: I want to shift to the judgment pleadings.

THE COURT: Yes, hang on. I need to take a very brief recess. We'll be back at five minutes to 12. All right.

(Short recess at 11:52 a.m.)

(IN OPEN COURT)

(11:56 a.m.)

MR. WALSTON: Your Honor, to close the loop on this, if you will, in Texas, the applicability of the discovery rule is a factual-based inquiry that simply must be decided plaintiff by plaintiff, and that's what juries are for to determine whether or not that they get the benefit of the discovery rule. It's most often resolved by a jury. And in situations where the facts are not in dispute, at times it can be resolved at the summary judgment phase of the case. I found no instance in which it's ever been resolved at a judgment on the pleadings stage.

The points I wanted to address about the motion for leave to amend are different than the fraudulent concealment issues that the Court has raised. And I understand the Court's position on the MDL. I will say that the MDL was also dismissed for a period of time. You know, this one has a complex procedural history, and it's

applicability in that situation of inquiry notice being formed by the MDL, with the MDL subsequent dismissal, I believe really doesn't come back into play until the Court of Appeals reverses and puts the MDL back on track, particularly in the instance when the basis of the dismissal was a lack of general causation, that the Bair Hugger could not be proven to cause, infect PJIs generally, in which the Court is well aware was ultimately reversed.

What I wanted to address about the motion for leave to amend though is it's not just about fraudulent concealment. The motion for leave to amend is about all plaintiff specific allegations. The nature of the short form Complaint allows a plaintiff to put in specific causes of action under other state's laws. It does not permit it to put in plaintiff specific facts.

And so in an inquiry such as this where we're being held to a judgment on the pleading standards, we absolutely should be entitled to an opportunity to put those plaintiffs specific facts into our pleadings, which then the Court must accept as true at a motion for judgment on the pleading standard, which then necessitates the denial of their motions because these four plaintiffs have pled a factual basis as to when they became knowledgeable, specifically, about the potential that their infection was caused by the wrongful act of another.

They can dispute those facts. They can take depositions, you now, they can cross examine them on those facts, but in a motion for judgment on the pleadings standard, you have to except those facts as true. Those facts invoke the discovery rule in a way that necessitate the denial of this motion in this context.

So I just wanted to raise the issue because the Court and defendants seem laser focused on the fraudulent concealment aspect, and I acknowledge the Court's thinking on that. I disagree to an extent, but I wanted to make sure that the Court understood that the motion for leave to amend those pleadings wasn't just about fraudulent concealment. It's about the factual allegations of the specific plaintiffs necessary for the Court to conduct this motion for judgment on the pleading analysis of the discovery rule.

THE COURT: Okay. So if the motion to amend were allowed and the specific plaintiff factual matters are pleaded, it almost sounds like they could then move for judgment on the pleadings at that time based on whatever the factual allegations are.

MR. WALSTON: Correct. And in this instance, the factual allegations are that they did not become aware that their PJIs were potentially caused by the wrongful act of someone else until within the statute of limitations period.

THE COURT: You use the word "potentially" and

that I think is dangerous for your argument because wouldn't it be potentially caused -- wouldn't any plaintiff know that it would be potentially caused by the wrongful act of another?

MR. WALSTON: Thank you for correcting me. It's likely caused by the wrongful act of another. If you look at the *Schlumberger Tech* case that I put up there, it quote is that it was "likely caused by the wrongful act of another."

THE COURT: Okay. Anything else?

MR. WALSTON: No, Your Honor. Thank you.

THE COURT: Thank you, Mr. Walston.

Come on up, Mr. Mandler.

MR. MANDLER: I'll be brief, Your Honor.

THE COURT: Good. Thank you. I appreciate it.

Big question, of course, is are you aware of any cases in which a court has decided the discovery rule application under Texas law on a either a Rule 12(b)(6) or a Rule 12(c) motion?

MR. MANDLER: I'm not, but I'm also not aware of too many MDLs that are in this posture of our MDL that have been going on for 10 years, and we are where we are. The reason we brought it as a 12(c) motion is a Rule 56 motion is purely procedural, but it could easily by converted to a Rule 56 motion if that makes the plaintiffs happy because

the facts that we need to know are known, which is when, and they were all in the single chart that I showed at the beginning that's in our briefing. Those are the only facts that matter right now.

The issue is an issue of law for the Court and for the Court to decide on a categorical basis whether fact of injury in this case is inherently undiscoverable. That doesn't matter what individual plaintiffs allege. It's a straight issue of law for the Court to decide on a categorical basis.

The broader question of whether the discovery rules is decided in that way and that's the *Steel v. Rhone Poulenc* case that we cited, 962 S.W.2d 613, 618. Even inquiries about whether the plaintiffs' reasonable diligence would have uncovered a wrong are determined by Texas courts as a matter of law, and that's the *United Healthcare Services v. First St. Hospital*, 570 S.W.2d 323, 337 case. The only way that the plaintiffs' argument works is going back to the place I started, which is if they flip the question of caused by a wrongful exact and say that needs to be analyzed as part of the inherently undiscoverable prong and not as it should be as part of the objectively verifiable.

Everything that counsel said this morning is still premised on flipping those two because if it's just the

question of injury, the fact of injury and whether it's inherently undiscoverable, that has to be established. If that's not established, then all of the other allegations that they want to put into the Amended Complaint are irrelevant, and that can be decided by this Court as a matter of law.

*Schlumberger* and the other cases that he decided only apply in the latent disease sense and that we only get there if you have an injury not a cause, an injury that is inherently undiscoverable, then the courts turn to the question of whether it was caused by a wrongful act as part of the objectively verifiable prong.

THE COURT: Okay.

MR. MANDLER: That's it.

THE COURT: Thank you, Mr. Mandler.

All right. It's under advisement. We'll get orders and R&Rs out as soon as we're able. I know we have a number of similar motions that are pending, and they are pending. We'll get those out when we can.

All right. Let's go off the record for one second.

(Off the record discussion held)

(IN OPEN COURT)

MR. WALSTON: Your Honor, I wanted to correct my

appearance earlier. I had indicated that I represented the plaintiff Cook. That was incorrect. I got them out of order. I represent the plaintiff Cynthia Patton instead as well as the Ramirez case.

THE COURT: All right. Thank you. Off the record again.

(Court adjourned at 12:07 p.m.)

* * *

**CERTIFICATE**

I, MARIA V. WEINBECK, RMR, FCRR, certify that the foregoing is a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript from the proceedings produced to the best of my ability.

Certified by: *s/ Maria V. Weinbeck*
Maria V. Weinbeck, RMR-FCRR